UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

UNITED STATES OF AMERICA

v.                                    Criminal No. 3:25-cr-00005-GFVT-MAS

HOWARD KEITH HALL,

    *Defendant.*

_____

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION TO DISMISS INDICTMENT
_____

Comes the defendant, Howard Keith Hall, by counsel, and files this memorandum in support of the Motion to Dismiss Indictment.

## INTRODUCTION

Every once-in-a-while a grand jury returns an indictment that simply does not charge a crime. This is such a case.

Here, the defendant—the former Pike County Attorney and current Pike County Circuit Court Judge—is alleged to have committed mail fraud and federal funds fraud while serving as the Pike County Attorney because compensation and benefits were paid to an Assistant Pike

County Attorney—"Attorney A," now known to be Michael Shane Hall—for supposedly little in the way of services provided in that capacity.[1]

The indictment is brought last-minute—after Hall served as assistant county attorney for nearly ten years and on the eve of him having been gone from that position for nearly five years. Consequently, Judge Hall finds himself in the unenviable position of defending allegations dating back fifteen years and after being out of the county attorney's office almost five years. A more unfair set of circumstances is hard to imagine.

That said, the indicted charges nevertheless rest on two false premises: first, that part-time assistant county attorneys were required to work, on average, at least 100 hours per month, and, second, that Judge Hall, when he was county attorney, provided false "payroll certifications" that Hall had fulfilled his duties as an assistant county attorney during each payroll period. There is not, and there never has been, a requirement that part-time assistant county attorneys must work any particular number of hours, much less 100 hours per month on average. And Judge Hall *never* provided any false payroll certifications. In fact, the Kentucky Court of Appeals addressed and decided these issues years ago, leaving Judge Hall—and all others similarly-situated—with no notice that the conduct alleged in the instant indictment could possibly be considered criminal under any statute, much less under the federal criminal fraud statutes.

For the reasons that follow, the indictment should be dismissed.

---

[1] The defendant, Judge Hall, and "Attorney A," Michael Shane Hall, are not related. To distinguish the two throughout this memorandum the defendant will be referred to as "Judge Hall" and Michael Shane Hall will be referred to simply as "Hall."

## **LEGAL STANDARD**

Federal Rule of Criminal Procedure 12(b)(3)(B)(v) provides for the dismissal of an indictment for "failure to state an offense." In considering a motion to dismiss, the Court must determine whether the allegations in the indictment, if proven, are sufficient to state an offense. *United States v. Higgins*, 511 F. Supp. 453, 454 (W.D. Ky. 1981) (citing *United States v. Sampson*, 371 U.S. 75, 78-79 (1963)). "The Court may properly decide all questions of law raised by defendants as grounds for dismissing the indictment." *Id.* at 454 (citing *United States v. Jones*, 542 F.2d 661, 664-65 (6th Cir. 1976)).

District courts are encouraged to resolve pretrial criminal motions before trial if they are capable of determination without trial of the general issues. *United States v. Levin,* 973 F.2d 463, 467 (6th Cir. 1992). "[A] defense may be properly raised pursuant to Rule 12 'if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'" *United States v. Ali*, 557 F.3d 715, 719 (6th Cir. 2009) (quoting *United States v. Covington*, 395 U.S. 57, 60 (1969)). Moreover, "district courts may make preliminary findings of facts necessary to decide questions of law presented by pretrial motions so long as the trial court's conclusions do not invade the province of the ultimate finder of fact." *Levin,* 973 F.2d at 467. If the facts alleged by the indictment do not state an offense, the indictment fails as a matter of law and should be dismissed. *See, e.g., United States v. Landham*, 251 F.3d 1072, 1081-83 (6th Cir. 2001). The Court may also consider "undisputed extrinsic evidence" to determine whether the government can prove an essential element beyond a reasonable doubt at trial. *Levin*, 973 F.3d at 470. Any "extrinsic evidence" relied upon in this motion is "undisputed."

## **THE INDICTMENT**

As the indictment alleges, the defendant, Howard Keith Hall, was the Pike County Attorney. (Dkt. #1: Indictment, ⁋ 1). He held that position for 24 years—from July 1996 until August 24, 2020, when he resigned to run for Circuit Court Judge. As alleged, county attorneys could appoint the persons to serve in the county attorney's office, including assistant county attorneys. (Id., ⁋ 4). Michael Shane Hall was employed as an assistant county attorney for Pike County from October 1, 2010 until May 15, 2020. (*Id.,* ¶ 12).[2]

The indictment alleges that the Pike County Attorney's Office was part of Kentucky's Unified Prosecutorial System ("UPS"). *See* Dkt. #1, ¶ 2; KRS § 15.700. The UPS is administered, for limited purposes, by a Prosecutors Advisory Council ("PAC"). *See* Dkt. #1, ¶ 2; KRS § 15.705.

Particularly salient to this motion to dismiss, the indictment contends as follows:

- "At the end of each pay period, County Attorneys had to complete and sign Payroll Certification forms, certifying that the listed employees fulfilled all duties of their employment, *including worked a certain number of hours to maintain full time or part time status*." (Dkt. #1, ⁋ 4 (emphasis added)).

- "Part time positions within the Unified Prosecutorial System were classified as positions where the employee was required to work, on average, over 100 hours per month on an annual basis." (*Id.,* ⁋ 5).

---

[2] Although not pertinent to the resolution of this motion, by statute, both county attorneys and assistant county attorneys are permitted to a maintain private law practice. *See* KRS § 15.765(4) (county attorneys); KRS § 15.770(3) (assistant county attorneys).

- "Beginning on or about October 1, 2010," Judge Hall appointed Michael Shane Hall "as a part time assistant county attorney for Pike County, *which required [Hall] to work at least 100 hours per month, on average*," for the Pike County Attorney's Office. (*Id.,* ¶ 11 (emphasis added)).

- Hall "performed almost no work on behalf of the" Pike County Attorney's Office, "did not report to work at the PCAO," and "other than a handful of times, did not represent the PCAO in court." (*Id.,* ¶ 12).

- "At no time between October 1, 2010, and May 15, 2020, *did [Hall] work more than 100 hours per month* on behalf of the" Pike County Attorney's Office. (*Id.,* ¶ 12 (emphasis added)).

- "Beginning on or about October 1, 2010, and continuing through May 15, 2020," Judge Hall "submitted false payroll certifications to the PAC, every pay period, asserting [Hall] fulfilled his duties as a part time assistant county attorney for Pike County." (*Id.,* ¶ 13).

Based on these allegations, Judge Hall is charged with two counts of mail fraud, 18 U.S.C. § 1341, because allegedly false "Payroll Certification[s]" were mailed to the PAC on April 30, 2020 and May 15, 2020,[3] and one count of federal funds fraud, 18 U.S.C. § 666(a)(1)(A), for Hall's receipt of compensation as an assistant county attorney. All three counts rely on false premises:

---

[3] In describing the mail fraud "scheme," the indictment references the time period October 1, 2010 through May 15, 2020—the entire period of Hall's employment as an assistant county attorney—and alleges that during that entire time Judge Hall "submitted false payroll certifications to the PAC, every pay period." (Dkt. #1, ¶s 11, 13). But the government only has—and has only produced—payroll certifications dating back to January 15, 2016, and for this reason the mail fraud charges (Counts 1 and 2) only address the time period of January 19, 2016 through May 15, 2020. (*Id.*, ¶ 16). In reality, the government does not know what, if any, "payroll certifications" were submitted to the PAC from 2010 through 2015, and certainly has no evidence to allege that they were "false."

that there was a requirement for part-time assistant county attorneys to work 100 hours per month and that Judge Hall submitted false "payroll certifications" to the PAC.

## ARGUMENT

### I.    THE INDICTMENT LACKS ANY STATE-LAW UNDERPINNING

The indictment is grounded on the legally unsupported notion that part-time assistant county attorneys were required to work at least 100 hours per month, on average.  There is no requirement that assistant county attorneys work any particular number of hours—per month or annually.  For this and other reasons, the contention that Judge Hall submitted false "payroll certifications" to the PAC related to Michael Shane Hall is, likewise, legally unsupported.

### A.  The 100-hour "requirement"

There is no requirement that part-time assistant county attorneys must work 100 hours per month.  The duties and qualifications of assistant county attorneys are statutory and minimal:

> The assistant county attorneys shall reside in the county in which the county attorney is elected, or within thirty (30) miles of the county line, or in a contiguous county and shall be attorneys licensed to practice in the Commonwealth, and shall have the same powers and perform the same duties that county attorneys have and perform, except that they shall be under the direction and control of the county attorney.

KRS § 69.300.

The appointment of assistant county attorneys is controlled by KRS § 15.770, which provides that the county attorney appoints assistant county attorneys "with the approval of the Prosecutors Advisory Council."  KRS § 15.770(1).  It is undisputed that Hall's appointment as an

assistant county attorney was known to and approved by the PAC pursuant to the following

appointment letter of October 8, 2010:[4]

OFFICE OF

**HOWARD KEITH HALL**

PIKE COUNTY ATTORNEY
P.O. Box 1289
PIKEVILLE, KENTUCKY 41502-1289

TELEPHONE: (606) 433-1822
FAX: (606) 432-3016

PROSECUTORS ADVISORY
COUNCIL

2010 OCT 11 A 11: 45

PT-005

October 8, 2010

Prosecutors' Advisory Council
Office of the Attorney General
C/O Ms. Debbie Sutherland
Capitol Suite 118
700 Capitol Avenue
Frankfort, Ky 40601-3449

Dear Ms. Sutherland:

This will confirm your conversation with Michael Shane Hall on
October 6, 2010, in regards to his application for employment.
Pursuant to that conversation, please accept this letter as notice
of Mr. Hall's employment with the Pike County Attorney's office
effective immediately. He will be employed as part-time assistant
Pike County Attorney, and will be paid a salary of $10,000.00 per
year with full insurance and retirement benefits. *start on*
*October 1, 2010 if you can.* *better*
If you have any questions, please do not hesitate to call.

Sincerely,

Howard Keith Hall
Pike County Attorney

The compensation of assistant county attorneys is likewise addressed by statute as follows:

> (5) All salaries paid to personnel appointed under this section [assistant county
> attorneys, stenographers, secretaries, and other staff positions] shall be paid from
> the *State Treasury* to the extent such personnel assist in prosecutorial duties. Such
> salaries shall be commensurate with the appointee's education, experience, training
> and responsibility, and *be based upon the guidelines established by the Prosecutors
> Advisory Council, which guidelines shall be comparable with the classification and
> compensation plan for comparable positions maintained by the state Personnel
> Cabinet, pursuant to KRS 64.640.*

KRS § 15.770(5) (emphasis added).

---

[4] This letter was produced in discovery as USA-00000769. A copy is attached as Exhibit 1.

Neither of those statutes, nor any other, distinguish full-time from part-time employment for assistant county attorneys; neither of those statutes, nor any other, require that assistant county attorneys "work[] a certain number of hours to maintain full time or part time status," as alleged in the indictment. *See* Dkt. #1, ¶ 4. Thus, the allegation in the indictment that Michael Shane Hall's appointment "as a part time assistant county attorney for Pike County . . . *required* [him] to work at least 100 hours per month, on average," *id.,* ¶ 11 (emphasis added), is simply wrong as a matter of law. There is no legal authority for that claim.[5]

Furthermore, during Hall's employment as an assistant county attorney there were no "guidelines" established by the PAC "comparable with the classification and compensation plan for comparable positions maintained by the state Personnel Cabinet, pursuant to KRS 64.640," as required by KRS § 15.770(5). Any "classification and compensation plan" implemented pursuant to KRS § 64.640 must be specific and demanding, *to wit*:

> [T]he Personnel Cabinet shall prepare schedules of compensation, payable out of the State Treasury, with a minimum salary rate, and other salary rates as deemed necessary or advisable, for the office or position of employment, including specifically the offices and positions of employment in every constitutional administrative department, statutory administrative department, independent agency, board, commission, or other unit of state government. . . . The schedules and rates shall *be based upon studies of the duties and responsibilities of the offices and positions and upon a comparison with rates being paid for similar or comparable services elsewhere. . . .*

KRS § 64.640(1) (emphasis added). No such "classification and compensation plan," with the required "studies," was established by the PAC until Fiscal Year 2025, long after Hall's employment with the county attorney's office ended.[6]

---

[5] This is likely the reason the indictment does not cite any authority for the allegation.

[6] The Prosecutors Advisory Council Administrative Manual (rev. 11/20/2024), produced in discovery as USA-00000200, provides: "In *Fiscal Year 2025* [which began on July 1, 2024] the Salary Classification

Simply put, the indictment's reference to a 100-hour-per-month work requirement is not found in any statutes or administrative regulations (of which there are none) addressing assistant county attorneys. The so-called "100-hour requirement" is *non-existent.*

The only place where a 100-hour-per-month threshold is even referenced is in the statutes defining "employees" who are eligible for participation in the Kentucky Employees Retirement System ("KERS").[7] Two subsections of KRS § 61.510 are relevant.

First, subsection (5) defines "employee" for purposes of KERS participation to include "every regular, full-time, appointed or elective officer or employee of a participating department," but specifically excludes "part-time workers." KRS § 61.510(5). Second, subsection (21) defines "'[r]egular full-time positions,' as used in subsection (5)" to mean:

> "all positions that average one hundred (100) or more hours per month by using the number of months actually worked within a calendar or fiscal year, including all positions except:
>
> . . .
>
> (d) Part-time positions which are positions which may be permanent in duration, but which require less than a calendar or fiscal year average of one hundred (100) hours of work per month, determined by using the number of months actually worked within a calendar or fiscal year, in the performance of duty.

KRS § 61.510(21) (emphasis added).[8] Subsection (21) appears to say that "part-time positions" are those requiring "*less than* a calendar or fiscal year average of one hundred (100) hours of work per month." KRS § 61.510(21) (emphasis added).

---

and Compensation Plan (SCCP) *was established* and funding was appropriate [sic] in HB 6/Executive Budget in the 2024 legislative session." (Emphasis added).

[7] The statutory scheme governing KERS is found at KRS §§ 61.510 *et seq.*

[8] Oddly, subsection (5), in contrast to subsection (21), makes no reference to "positions" or "part-time positions"; it references only "full-time, appointed or elective officer[s] or employee[s]" and "part-time workers."

Clearly, there was no statutory requirement that Michael Shane Hall, or any other part-time assistant county attorney, work 100 hours per month.  Ironically, for a "part-time" assistant county attorney to be considered "full-time" for purposes of KERS participation, however, they were supposed to work an average of 100 hours per month.

It is undisputed that Michael Shane Hall made application for participation in KERS on October 1, 2010, contemporaneous with his appointment as an assistant county attorney, by means of the following form:[9]

---

[9] This document was produced in discovery as USA-00000778.  A copy is attached as Exhibit 2.

## MEMBERSHIP INFORMATION
## KENTUCKY RETIREMENT SYSTEMS
PERIMETER PARK WEST
1260 LOUISVILLE ROAD
FRANKFORT, KY 40601-6124
(502) 564-4646 ext. 4522
or (800) 928-4646 ext. 4522

NAME: _Michael Shane Hall_          SOC. SEC. NO.: _____

ADDRESS: _____ _Pikeville, Ky 41502_
STREET, ROUTE OR BOX                  CITY

_Pike_                    _KY_          _41502_
COUNTY                    STATE          ZIP

HOME PHONE: _(606) 432-8065_     WORK PHONE: _(606) 433-0433_

DATE OF BIRTH: _____   SEX: ☒ MALE   ☐ FEMALE   MARITAL STATUS: _M_
month   day   year
FULL NAME OF EMPLOYING AGENCY: Unified Prosecutorial System
(DO NOT ABBREVIATE)
DATE OF EMPLOYMENT WITH THE AGENCY: _10/1/10_

OTHER NAME UNDER WHICH YOU MAY HAVE BEEN PREVIOUSLY EMPLOYED: _____

### PREVIOUS COUNTY, CITY OR STATE EMPLOYMENT:

| DEPARTMENT OR AGENCY | POSITION | FROM Mo. | Day | Yr. | TO Mo. | Day | Yr. | ADMINISTRATIVE USE Mo. | Day | Yr. | VERIF. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pike Co. Atty | Asst. Co. Atty. | 06 | 01 | 99 | 02 | 01 | 02 | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |
| | | | | | | | | | | | |

### STATEMENT OF ACTIVE DUTY MILITARY SERVICE:

| BRANCH OF SERVICE | DATES OF ACTIVE DUTY SERVICE Mo. | Day | Yr. | TO | Mo. | Day | Yr. | ADMINISTRATIVE USE Mo. | Day | Yr. | VERIF. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | | |

I understand that no benefits may be paid to me or my beneficiary until this completed form is filed at the retirement office.

SIGNATURE: _M S Hall_          DATE: _10-1-10_

USA-00000778

That Hall applied for and was apparently credited retirement (and perhaps other benefits) by the PAC is not disputed for purposes of this motion.  Regardless, no false certifications were provided to the PAC about Michael Shane Hall.

B.  The "payroll certifications"

The so-called "payroll certifications"[10] at issue look like this:

---

[10] The "payroll certification" of April 30, 2020, related to Count 1, was produced in discovery as USA-00000481, and the "certification" of May 15, 2020, related to Count 2, was produced as USA-00000482. Copies of these are attached as Exhibits 3 and 4, respectively.

# UNIFIED PROSECUTORIAL SYSTEM
## PAYROLL CERTIFICATION
## SALARIED EMPLOYEES

_____PIKE_____ County

This is to certify that the salaried employees listed below have fulfilled all statutory duties of their employment for the pay period ending on _5-15-2020_, except as noted for leave without pay (LWOP) as a result of one of the following: (1) family medical leave (FM), (2) military leave (MI), (3) a budget-imposed furlough (FU), or (4) other LWOP (O). For LWOP, please put one of the above-listed codes in the third columns and the dates of leave in the fourth column below.

| EMPLOYEE NAME | POSITION | STATUS | THIS EMPLOYEE WORKED AN AVERAGE OF 30 HOURS PER WEEK THIS PAY PERIOD | LWOP CODE (FM MI FU O) | DATES FOR LWOP |
|---|---|---|---|---|---|
| Tawana Huffman | Legal Secretary | FT | ☑ | | |
| Karen Harr | Legal Secretary | FT | ☑ | | |
| Michael Hall | Co Atty Assistant | PT | ☐ | | |
| Joe Friend | Co Atty Assistant | PT | ☐ | | |
| Robert Polous | Legal Secretary | FT | ☑ | | |
| Tommy Chamberlin | Co Atty Assistant | PT | ☑ | | |
| Donald Deskins | Co Atty Assistant | PT | ☑ | | |
| Cullen Hall | Legal Secretary | PT | ☐ | | |
| | | | ☐ | | |
| | | | | | |

COUNTY ATTORNEY SIGNATURE
(MUST BE ORIGINAL SIGNATURE)

Please return Payroll Certification to: Prosecutors Advisory Council Staff, 1024 Capital Center Drive, Frankfort, KY 40601-8204. (Direct questions regarding receipt of check to 1-888-722-7823).

DUPLICATE FORM AS NEEDED

Every "payroll certification" submitted to the PAC during Hall's years of employment as an assistant county attorney is the same.[11] Each "certification" merely reflects that "the salaried

---

[11] "Payroll certifications" dating back to January 15, 2016 have been produced in discovery. Each one contains the exact same "certification" language. The government has advised that "payroll certifications" prior to January 15, 2016 are no longer available, explaining the time frame in paragraph 16 of the indictment—January 19, 2016 through May 15, 2020.

13

employees listed . . . have satisfied all *statutory duties* of their employment for the pay period."
(Emphasis added). And as previously noted, the statutory duties of an assistant county attorney
are minimal, *to wit*:

> The assistant county attorneys shall reside in the county in which the county
> attorney is elected, or within thirty (30) miles of the county line, or in a contiguous
> county and shall be attorneys licensed to practice in the Commonwealth, and shall
> have the same powers and perform the same duties that county attorneys have and
> perform, except that they shall be under the direction and control of the county
> attorney.

KRS § 69.300. Oddly, each "certification" asks whether the listed employees have "worked an
average of 30 hours per week" during the pay period.[12] But significantly, each certification reports
that "Michael Hall"—the same person as Michael Shane Hall—worked only part-time (shown as
"PT" on the form) and ***did not work 30 hours per week for the pay period***.[13]

      Simply put, there is no statutory requirement that assistant county attorneys work a
particular number of hours during a pay period and no one ever "certified" that Hall worked a
particular number of hours. No false or misleading information was provided to the PAC about
Hall—or any employee—through the mailed "payroll certifications." ***Every*** certification informed
the PAC that Hall was ***part-time***, *i.e.*, "PT," and that he worked ***less than*** 30 hours per week.

    C. <u>Kentucky caselaw precedent</u>

      The Kentucky Court of Appeals addressed a nearly identical situation in *Commonwealth v.
James Wiley Craft and Patsy L. Stallard*, Case No. 94-CA-001342-MR (hereinafter "*Craft*"), an

---

[12] It is unknown why the "payroll certifications" reference "30 hours per week." The 30-hour period appears
unrelated to any legal requirement.

[13] The same is true for every "payroll certification" produced by the government in discovery. None of
them "certify" that Hall worked 30 hours per week during the pay period.

unpublished opinion rendered on July 28, 1995, one year before Judge Hall took office as the Pike County Attorney.[14]

Craft was the Letcher County Commonwealth's Attorney and Stallard was a "permanent part-time employee" of that office. *Craft* at 2. Craft and Stallard were both indicted for state-law theft offenses arising from "Stallard's collection and cashing of state payroll checks and Craft's certification of Stallard's fulfillment of her job responsibilities which was required before the payroll checks were issued." *Id.* at 1-2. The charges "centered around the amount of time Stallard spent on official business of the Commonwealth's Attorney's Office as compared with the work she did for Craft's private civil practice for which she also worked part-time." *Id.* at 2. The trial court dismissed the indictment on due process grounds "as there existed no statutory or administrative requirement specifying the number of hours Stallard was to spend on official responsibilities," thus neither Craft nor Stallard "was sufficiently apprised of what course of conduct constituted a criminal offense." *Id.*

On appeal, the Kentucky Court of Appeals noted the payroll certification language—which is the same, but for a grammatical correction, as that in the instant case, *to wit:*

> This is to certify that the salaried employees listed below has (sic) fulfilled all statutory duties of their employment for the pay period ending _____.

*Craft* at 2-3. The court then noted the (now familiar) theory of prosecution: "The Commonwealth maintains that Stallard as a permanent part-time employee, was required to work a minimum of one hundred hours a month to be entitled to her regular paycheck." *Id.* at 3.[15] The Court of Appeals

---

[14] A copy of the *Craft* opinion is attached as Exhibit 5.

[15] The indictment in the instant case alleges the same theory. *See* Dkt. #1, ¶ 5 ("Part time positions within the Unified Prosecutorial System were classified as positions where the employee was required to work, on average, over 100 hours per month on an annual basis."); *id.*, ¶ 11 ("required Attorney A to work at least 100 hours per month, on average").

then cited KRS § 15.760,[16] which required that salaries in the Commonwealth's Attorneys' offices be based upon "guidelines" established by the PAC, "which guidelines shall be comparable with the classification and compensation plan for comparable positions maintained by the state Department of Personnel, pursuant to KRS 64.640."[17] *Id.* at 3. The court concluded:

> The Commonwealth admits that the guidelines at the time relevant to this prosecution did not specify the number of hours that a part-time employee was required to work. Nevertheless, the Commonwealth, citing KRS Chapter 64, contends that a one hundred hour per month requirement exists and that such was reasonably known to the defendants. We have reviewed the statutes and administrative regulations, including Chapter 64, and can find nothing which states the number of hours that a part-time employee of the Commonwealth's Attorney's office is required to work. . . . *It is the opinion of this Court that the Commonwealth does not have a basis in law for alleging the existence of a one-hundred-hour requirement.* KRS 15.760 delegated to the Prosecutors Advisory Counsel the responsibility of establishing the requirements of Stallard's job. As the Council failed to specify a minimum number of hours to be worked by part-time employees, and no other statute or regulation applied, *no such requirement existed*. We also reject the Commonwealth's description of this case as one where Stallard simply did not work the hours she and Craft represented. *The forms executed by Craft did not certify that Stallard had worked any number of hours, but only that the statutory requirements (such as they may be) had been met.*

*Id.* at 3-4 (emphasis added). Ultimately, the court held that the charges were properly dismissed because "no . . . statute applies" to criminalize the charged conduct. *Id.* at 4.

These conclusions are as true today as they were in 1995. The statutes, including KRS Chapter 64, do not set any minimum number of required hours for part-time assistant county attorneys. Consequently, the government "does not have a basis in law for alleging the existence of a one-hundred-hour requirement." *Craft* at 4. And the "payroll certifications" in this case "did not certify that [Hall] had worked any number of hours, but only that the statutory requirements

---

[16] KRS § 15.760 applies to commonwealth's attorneys' offices and is the mirror of KRS § 15.770 for county attorney offices.

[17] This is the same language as contained in KRS § 15.770(5). *See* p. 7, *supra.*

(such as they may be) had been met."[18]  *Craft* at 4.  As a result, the indictment lacks the necessary

state-law underpinning for the federal fraud charges alleged, and must therefore be dismissed.

II.    THE REQUIRED MATERIAL FALSEHOOD NECESSARY FOR A FRAUD
OFFENSE IS MISSING

Counts 1 and 2 of the indictment charge a "scheme and artifice to defraud and obtain money

by materially false and fraudulent pretenses, representations, and promises" using the mails, in

violation of 18 U.S.C. § 1341.  Dkt. #1, ¶s 10-17.  Similarly, Count 3 charges a "scheme" to obtain

federal funds "by fraud," in violation of 18 U.S.C. § 666(a)(1)(A).  Dkt. #1, ¶s 10-14, 18-19.  Given

that there is no material falsehood involved in this case, all three counts must be dismissed.

A.  The Mail Fraud Counts Must Be Dismissed

In *Neder v. United States,* 527 U.S. 1 (1999), the Supreme Court addressed "whether

materiality is an element of a 'scheme or artifice to defraud'" under the federal mail, wire, and

bank fraud statutes. *Id.* at 20.  The Court unequivocally held that it is: "materiality of falsehood is

an element of the federal mail fraud, wire fraud, and bank fraud statutes."  *Id.* at 25.[19]

In reaching this conclusion the Court drew upon the meaning of "fraud" at common law,

finding that "at the time of the mail fraud statute's original enactment in 1872, . . ., actionable

'fraud' had a well-settled meaning at common law" that "required a misrepresentation or

concealment of *material* fact."  *Id.* at 22 (emphasis original).  Indeed, the Court observed, "the

common law could not have conceived of 'fraud' without proof of materiality."  *Id.*  Thus, "the

---

[18] The payroll certifications, in both *Craft* and this case, reference statutory "duties," not statutory "requirements."

[19] Cases addressing any of these three statutes are authoritative on the issue of materiality.  In fact, the Supreme Court recently reiterated that "we have construed identical language in the wire and mail fraud statutes *in pari materia*."  *Kousisis v. United States,* 605 U.S. ___, 145 S. Ct. 1382, 1390 n.2 (2025) (cleaned up) (quoting *Ciminelli v. United States,* 598 U.S. 306, 312 n.2 (2023), and citing *Kelly v. United States,* 590 U.S. 391, 398 (2020)).

common law has long embraced . . . materiality . . . as the principled basis for distinguishing everyday misstatements from actionable fraud." *Kousisis v. United States,* 605 U.S. ___, 145 S. Ct. 1382, 1396 (2025). Plainly, "'materiality of falsehood is an element of'—and thus a limit on— the federal fraud statutes." *Id.* at 1396. That "limit" must be observed here.

To commit a federal fraud offense, the defendant must have "engaged in deception." *Kousisis,* 145 S. Ct. at 1390 (cleaned up) (citing *Ciminelli v. United States,* 598 U.S. 306, 312 (2023), and quoting *Kelly v. United States,* 590 U.S. 391, 398 (2020)). The materiality element is only satisfied where the deception has "the purpose of inducing the victim of the fraud to part with the property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *United States v. Daniel,* 329 F.3d 480, 487 (6th Cir. 2003). "Conduct or speech that is immaterial – irrelevant – to a putative victim cannot be fraud." *United States v. Klein,* 476 F.3d 111, 114 (2d Cir. 2007). Logically, then, "one cannot fraudulently induce a victim to part with [property] 'by means of' immaterial representations." *Id.* And, "[n]ot all conduct that strikes a court as sharp dealing or unethical conduct is a 'scheme or artifice to defraud.'" *Reynolds v. East Dyer Dev. Co.,* 882 F.2d 1249, 1252 (7th Cir. 1989). For instance, mere silence—as contrasted against active concealment of information—is insufficient. *United States v. Steffen,* 687 F.3d 1104, 1115 (8th Cir. 2012). To violate the mail fraud statute, it takes "active or elaborate steps to conceal." *Reynolds,* 882 F.2d at 1253.

In *Kousisis* the affirmative misrepresentations were deemed material to the charged wire fraud scheme. 145 S. Ct. at 1396 (describing materiality of the misrepresentations as "not contested"). There Kousisis, the manager of an industrial painting company, submitted bids for two Philadelphia projects. The federal grants funding the projects affirmatively required bidders

to attribute ten percent of the federal funds to a disadvantaged business. Federal regulations specifically prohibited using a disadvantaged business as a mere pass through, only giving the appearance of disadvantaged-business participation. But to secure the bids on the projects for his company that is exactly what Kousisis did—arrange for a disadvantaged business to act as a pass-through supplier of paint for a small fee, not performing any "commercially useful function" as required by the federal regulations. *Id.* at 1388-89. Kousisis affirmatively misrepresented that the regulatory requirement of disadvantaged-business participation for a "commercially useful function" had been satisfied when it had not.

Similarly, the materiality element was satisfied in *United States v. McAuliffe,* 490 F.3d 526 (6th Cir. 2007), involving a mail fraud scheme to obtain insurance proceeds. There the defendant filed fire loss claims affirmatively misrepresenting to the insurance company that the cause and origin of the fire were "unknown to claimant," when, in fact, the defendant/claimant had participated in setting the fire. *Id.* at 529, 533-34.

In stark contrast to those examples, there were no material misrepresentations in this case necessary for a scheme or artifice to defraud. And there were no "deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or avert further inquiry into a material matter," necessary for scheme to defraud by concealment. *United States v. Colton,* 231 F.3d 890, 901 (4th Cir. 2000). Michael Shane Hall was, in fact, a duly-appointed, part-time assistant county attorney. The PAC "payroll certification" forms only required the listed employees to have "fulfilled all statutory duties"—which were virtually non-existent, even being described by the Kentucky Court of Appeals as "such as they may be." No statute required assistant county attorneys to work a particular number of hours. Moreover, the PAC "payroll certification" forms

did not ask county attorneys to "certify" the number of hours worked by office employees, including assistant county attorneys. The forms asked only for "certification" as to whether the listed employees were part-time or full-time and whether they "worked an average of 30 hours per week this pay period." Why the PAC wanted to know whether employees "worked an average of 30 hours per week" is a complete mystery. But regardless, Judge Hall never—not once—*mis*represented to the PAC that Michael Shane Hall had worked 30 hours per week or that he was anything other than a part-time assistant. On every certification Hall was listed as part-time, *i.e.,* "PT"; on every certification the box beside Hall's name was left *un*checked, clearly indicating that Hall *had not* "worked 30 hours per week this pay period." Nothing about the payroll certification forms that were allegedly mailed to the PAC was misleading—let alone "materially" misleading.

It cannot be credibly argued that Judge Hall "engaged in deception." *Kousisis,* 145 S. Ct. at 1390. To the contrary, it was truthfully represented on every "payroll certification" that Michael Shane Hall was part-time and had *not* worked 30 hours per week during the pay period.

There is no material misrepresentation in this case. Accordingly, Counts 1 and 2 must be dismissed.

      B.      <u>The Federal Funds Fraud Count Must Be Dismissed</u>

Count 3 also charges a "scheme" to obtain federal funds "by fraud," this time in violation of 18 U.S.C. § 666(a)(1)(A). Dkt. #1, ¶s 10-14, 18-19. As materiality is an embedded element of any fraud offense, it necessarily applies to a § 666(a)(1)(A) charge based on fraud.

The *Neder* Court observed that "at the time of the mail fraud statute's original enactment in 1872, and later when Congress enacted the wire fraud and bank fraud statutes, actionable 'fraud' had a well-settled meaning at common law" that "required a misrepresentation or concealment of

*material* fact." *Neder v. United States,* 527 U.S. 1, 22 (1999) (emphasis original). The point being that materiality has always been an embedded element of any fraud-based crime, whether articulated by the 1872 mail fraud statute, the later wire and bank fraud statutes, or the federal funds fraud statute. And so, extended logic dictates that materiality is necessarily an element of 18 U.S.C. § 666(a)(1)(A) fraud.[20]

As with any fraud-based offense, for there to be a fraud violation of § 666(a)(1)(A) there must be evidence that the defendant "engaged in deception." *Kousisis v. United States,* 605 U.S. ____, 145 S. Ct. 1382, 1390 (2025) (cleaned up) (citing *Ciminelli v. United States,* 598 U.S. 306, 312 (2023), and quoting *Kelly v. United States,* 590 U.S. 391, 398 (2020)). And as demonstrated above, there is no such evidence in this case. Accordingly, Count 3 must be dismissed.

III.    <u>SECTION 666(a)(1)(A) DOES NOT APPLY IN THE INSTANT CIRCUMSTANCES REQUIRING DISMISSAL OF COUNT 3</u>

Count 3 of the indictment charges a violation of 18 U.S.C. § 666(a)(1)(A). That statute makes it a crime for an "agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof" to "embezzle[], steal[], obtain[] by fraud, or otherwise without authority knowingly convert[] to the use of any person other than the rightful owner or intentionally misapp[y], property" valued at $5000 or more that is "owned by, or is under the care, custody, or control of such organization, government, or agency[.]" 18 U.S.C. § 666(a)(1)(A). This statute does not apply to the circumstances of this case, requiring the dismissal of Count 3.

---

[20] Counsel has not found a case directly addressing this point. The contention, however, is warranted by a nonfrivolous argument for extension of existing law or for establishing new law.

A. The § 666(c) Exception Prohibits Prosecution

Subsection (c) to § 666 provides: "This section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." 18 U.S.C. § 666(c). This salary/compensation exception applies to all of § 666. *United States v. Mills,* 140 F.3d 630, 633 (6th Cir. 1998).

There can be no dispute that Michael Shane Hall was an employee of the Pike County Attorney's Office. There can be no dispute that Hall was paid a salary as an assistant county attorney. The issue, plainly, is that Hall may not have worked as much as the government thinks he should have. But that is not a federal crime. "A plain reading of . . . section [666(c)], . . ., prohibits a prosecution under § 666 based on an employee's accepting wages for more hours than she actually worked." *United States v. Harloff,* 815 F. Supp. 618, 619 (W.D.N.Y. 1993). And more specific to this case, "salaries, wages, fees, and other compensation either *received by or promised by* § 666 defendants fall within the scope of the subsection (c) exception." *Mills,* 140 F.3d at 633 (emphasis original). So, clearly, the subsection (c) exception applies to the bank shot prosecution attempted here—a § 666 charge *against Judge Hall* for compensation applied for and accepted *by Michael Shane Hall*.

The subsection (c) exception has been applied in similar circumstances. In *Mills* the defendants, a "Chief Deputy Sheriff" and a "Staff Special Deputy," were charged in a § 666(a)(1)(B) scheme for accepting bribes in exchange for awarding deputy sheriff jobs to two individual "co-conspirators." 140 F.3d at 631. The government contended that the "co-conspirators' receipt of the deputy sheriff jobs paying more than $5000 per year" met the jurisdictional threshold of the statue. *Id.* at 633. In affirming the dismissal of the § 666 count,

however, the court reasoned that the § 666(c) exception applied to the salaries of the "co-conspirator" deputies and, as a result, the salaries "should not be considered in establishing the $5000 transactional valuation." *Id.* The court rejected the suggestion that acquisition of the deputy sheriff positions through illegal bribes disqualified the accompanying salaries as "bona fide" for § 666(c) purposes. *Id.* Consequently, the court looked only at the value of the bribes, which were less than the $5000 necessary to trigger criminal liability under the statute. *Id.* at 633-34.[21]

In *United States v. Mann,* No. 97-6179, 1999 U.S. App. LEXIS 160 (6th Cir. 1999), the defendant had, for many years, been the principal of a vocational school. The government charged him under § 666 alleging he lacked the statutory certification necessary to hold the position and, as a result, "his retention of the position and the *salary* derived therefrom [was] illegal under state law and thus in violation of the federal theft/bribery statute." *Id.* at *2 (emphasis original). "Each year," over a six-year period, the Kentucky Department of Education had "notified both the school district and Mann of his lack of certification." *Id.* at *4. Despite that fact, the district court (Bertelsman, J., E.D. Ky.) dismissed based on the § 666(c) exception. *Id.* at *2. The Sixth Circuit affirmed the dismissal noting that receipt of the salary even "in contravention of state regulations is not a federal crime." *Id.* at *10.

Most analogous to the assertions of the indictment in this case is *United States v. Harloff.* There the defendants were charged under § 666 "with falsifying payroll records by claiming to have worked 40-hour weeks when in fact they worked 'substantially fewer hours.'" 815 F. Supp. at 618. In dismissing the relevant counts of the indictment, the district court concluded that "[a]

---

[21] In commenting on the $5000 threshold, the court observed: "Congress has apparently determined that all . . . instances of bribery do not merit the attention of the federal courts. Instead, many such transgressions are best left to state judicial systems[.]" *Id.* at 634. This same rationale applies with equal force in this case. Congress, clearly, did not intend to criminalize the conduct here.

plain reading of [§ 666(c)], . . ., prohibits a prosecution under § 666 based on an employee's accepting wages for more hours that she actually worked." *Id.* at 619. The court acknowledged that the statute would permit "federal prosecution of an employee who invents fictitious workers and collects their 'wages' for his/her own use," *id.* at 619—clearly not the circumstance in the instant case. But significantly, the court observed, the "plain language" of § 666(c) "would prevent making a federal crime out of an employee's working fewer hours than he or she is supposed to work," *id.*—precisely the government's theory in this case.

To resay, there simply was no requirement that an assistant county attorney work a defined number of hours per week, per month, or per year. But § 666(c) prohibits the prosecution of Judge Hall even if there were such a requirement. This is an attempt to prosecute Judge Hall for Michael Shane Hall (allegedly) working fewer hours than (the government feels) he should have. Section 666(c) prevents the government from making such judgments. Count 3 must be dismissed.

## B. Judge Hall Is Not An "Agent" Under § 666

Section 666 only applies to individuals who qualify as "agents," whether of an organization or of a state or local government, or any agency thereof. The statute provides in relevant part:

> Whoever, if the circumstance described in subsection (b) of this section exists—(1) being an agent of an organization, or of a State [or] local . . . government, or any agency thereof—(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—(i) is valued at $5,000 or more, and (ii) is owned by, *or is under the care, custody, or control of such* . . . government, or agency . . .

violates the statute. 18 U.S.C. § 666(a)(1)(A) (emphasis added). Subsection (b) requires that the "organization, government, or agency" receive "benefits" exceeding $10,000 "under a Federal Program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." 18 U.S.C. § 666(b). Subsection (d) adds that, as used in § 666—

(1) the term "agent" means a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative[.]

18 U.S.C. § 666(d)(1).  Here, the indictment is legally deficient because Judge Hall was never an "agent" of the agency he allegedly defrauded—that being the Unified Prosecutorial System or its corollary, the Prosecutors Advisory Council.

The government causes the indictment to plead Judge Hall's alleged "agent" status through a Rube Goldberg-like web.  It alleges that the Pike County Attorney's Office was an agency within the Kentucky Unified Prosecutorial System, thus making it an agency of the Commonwealth of Kentucky.  (Dkt, #1, ¶ 6).  Next, it alleges that the Commonwealth of Kentucky received the requisite jurisdictional "benefits" from the United States government "through the Kentucky Unified Prosecutorial System."  (*Id.,* ¶ 7).  Then it asserts that the Pike County Attorney received the requisite jurisdictional "benefits" through the "Pike County Child Support Enforcement Office, an agency within the Kentucky Cabinet for Health and Family Services, and as such, an agency of the Commonwealth of Kentucky." (*Id.,* ¶ 8).[22]  And finally, the indictment pleads, in the most general manner possible, that Judge Hall, as county attorney, "was an agent of a state government agency."  (*Id.,* ¶ 9).

Count 3 relates to the "salary and benefits paid to" Michael Shane Hall by the Prosecutors Advisory Council, the PAC.  (*Id.,* ¶ 19).  But Judge Hall, during his time as county attorney, was not an "agent" of the PAC within the meaning of 18 U.S.C. § 666.  Accordingly, Count 3 fails to state an offense and must be dismissed.

---

[22] Child Support Enforcement funds are not implicated in this case.  There is no allegation that child support monies were misused or misappropriated.

Kentucky law clearly vests control over prosecutorial disbursements and personnel funding in the PAC—not individual county attorneys. *See* KRS § 15.770(1) (county attorneys appoint assistants "with the approval of the Prosecutors Advisory Council"); KRS § 15.770(5) (PAC to set salary guidelines and salaries that are paid from the "State Treasury"). The salaries of assistant county attorneys are paid by the PAC from the "State Treasury." So, even if the UPC and/or the PAC received the requisite federal "benefits"—a point not conceded—Judge Hall was never an "agent" of either.

To qualify as an "agent" under § 666, Judge Hall had to have "authority to act on behalf of" the PAC. *United States v. Hudson*, 491 F.3d 590, 595 (6th Cir. 2007); *see also* 18 U.S.C. § 666(d). Here, Judge Hall had no authority with respect to the PAC. The PAC's decisions affect the operations of county attorneys, but not vice versa. Judge Hall had no power to bind, control, represent, or manage the PAC. At no time was he a member of the PAC, nor was he tasked with executing PAC policy on the PAC's behalf.

In *United States v. Phillips,* 219 F.3d 404 (5th Cir. 2000), the court reversed the § 666 conviction of a parish Tax Assessor because he "was not an employee or officer of the parish and because he was not authorized to act on behalf of the parish with respect to its funds," and, as a result, his conduct "could not have threatened the integrity of federal funds or programs." *Id.* at 413. Similarly, in *United States v. Abu-Shawish,* 507 F.3d 550 (7th Cir. 2007), the court reversed the § 666 conviction because the defendant was not "an agent of the organization that he defrauded." *Id.* at 551. In reaching this result, the court observed: "[T]he agent who is potentially criminally liable must have fraudulently obtained property that is under the care, custody or control of the same organization for which he is an agent." *Id.* at 556. Significantly, the court rejected the

notion that "an individual can be held criminally liable under [§ 666] if he obtains funds by defrauding some other theoretical organization as long as he is an agent of an organization that then later has care, custody, and control of these funds." *Id.*

Judge Hall was not an "agent" of the PAC. He cannot be held liable under § 666.

IV.    <u>THE RULE OF LENITY REQUIRES DISMISSAL OF THE INDICTMENT</u>

Whether we are concerned about the ambiguities of the embedded element of "materiality" in the mail fraud and federal funds fraud statutes, or the application of the exception in 18 U.S.C. § 666(c), or the question of whether Judge Hall was an "agent" for § 666 purposes, the rule of lenity must apply and the indictment must be dismissed. In deciding that § 666's bribery prohibition does not criminalize "gratuities," Justice Gorsuch, in concurrence, ably noted that when "any fair reader" of a statute "would be left with a reasonable doubt about whether it covers the defendant's charged conduct . . . judges are bound by the ancient rule of lenity to decide the case . . . not for the prosecutor but for the presumptively free individual." *Snyder v. United States,* 603 U.S. 1, 20 (2024).

In surveying the broad scope of lenity, Justice Gorsuch observed:

> Lenity may sometimes . . . go unnamed. It may be deployed under other guises, too. "Fair notice" or "fair warning" are especially familiar masks. Other times, we clothe lenity in its corollary—that courts cannot "rely upon prosecutorial discretion to narrow the" scope of an "otherwise wide-ranging" criminal law. And in still other instances, we do much the same when we speak of the "restraint" necessary "in assessing the reach of a federal criminal statute."

*Id.* at 20-21 (citations omitted). Any of these labels could be applied to the circumstances in this case, particularly considering that the Kentucky Court of Appeals addressed a nearly identical fact pattern and concluded that it simply is not criminal.

The Supreme Court has instructed that lenity should be applied in construing the ambit of the mail fraud statute. *Cleveland v. United States,* 531 U.S. 12, 25 (2000) (holding that a state license is not property for purposes of the mail fraud statute). And courts have applied lenity in construing the 18 U.S.C. § 666(c) salary/compensation exception. *United States v. Harloff,* 815 F. Supp. 618, 619 (W.D.N.Y. 1993); *United States v. Mann,* No. 97-6179, 1999 U.S. App. LEXIS 160, *8 n.2 (6th Cir. 1999) (acknowledging district court's reliance on lenity). It should be applied here, especially since a Kentucky appellate court has reviewed a nearly identical set of facts and found no basis for criminal liability.

Lenity should apply to the attempted use of the federal mail fraud and federal funds fraud statutes in the instant circumstances. This is simply not a case for the application of the federal criminal statutes. The Kentucky Court of Appeals has held that the conduct is *not* criminal at all. But even if an application of the federal law were a close call (it is not), the call must *not* go "for the prosecutor but for the presumptively free individual." *Snyder,* 603 U.S. at 20. The indictment should be dismissed.

## **CONCLUSION**

For the foregoing reasons, the defendant, Howard Keith Hall, respectfully requests that the Court dismiss the indictment.

Respectfully submitted,

TRUE GUARNIERI AYER, LLP

  /s/ J. Guthrie True
J. Guthrie True
124 West Clinton Street
Frankfort, KY  40601
Telephone: (502) 605-9900
Facsimile: (502) 605-9901
E-mail: gtrue@truelawky.com

Counsel for Defendant

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing has been served on all counsel of record this 21st day of July, 2025, by filing a copy of the same with the Electronic Court Filing System of the United States District Court for the Eastern District of Kentucky.

  /s/ J. Guthrie True
Counsel for Defendant