UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HOWARD KEITH HALL,<br><br>Defendant. | Crim. No. 3:25-cr-00005-GFVT-MAS<br><br>**MEMORANDUM OPINION**<br>**&**<br>**ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on Defendant Howard Keith Hall's First Motion *in Limine*. [R. 40.] For the following reasons, Hall's motion will be denied.

**I**

Defendant Howard Keith Hall is the former County Attorney of Pike County, Kentucky. [R. 21-8 at 1.] Hall is a current Pike County Circuit Court Judge. *Id.* The United States charged Hall with two counts of mail fraud in violation of 18 U.S.C. § 1341 and one count of theft of government funds in violation of 18 U.S.C. § 666(a)(1)(A). [R. 1.] The charges stem from an alleged scheme in which Hall hired Attorney A[1] as an Assistant County Attorney and paid this attorney approximately $440,587 in state salary and benefits despite the attorney performing little to no work for the Pike County Attorney's Office ("PCAO"). *Id.* While Attorney A served as an Assistant County Attorney, Hall participated in the private practice of law at Attorney A's

---

[1] The Government refers to the attorney at issue as "Attorney A" throughout their briefing. Defendant Hall notes that Attorney A's identity is Michael Shane Hall, no relation to the Defendant. [R. 21-8 at 2.] To prevent confusion, this Memorandum Opinion will refer to Michael Shane Hall as "Attorney A."

law firm and received various payments described as "Distributions" totaling $505,900. *Id.* In essence, the United States alleges that Hall committed mail fraud by signing and mailing false payroll certifications indicating that Attorney A fulfilled his duties as a part time assistant county attorney despite doing no work.

Hall submitted this First Motion *in Limine* in response to the Government's filing of a 404(b) Notice. [R. 40, 26.] In that notice, the Government indicated it plans to present evidence from witnesses who told investigators that "the Defendant also employed two other individuals who did little or no work for the PCAO." [R. 26.] According to the Notice, Hall employed C.H., a family member of his, as a part-time legal secretary who "did not work a set schedule and performed little work for the PCAO." *Id.* Hall removed C.H. from the payroll "at approximately the same time Attorney A was removed from the PCAO payroll." *Id.* The Government also plans to introduce evidence that Hall used funds from the PCAO payroll to pay a candidate for family court judge, J.H., $3,000 a month. *Id.* Witnesses told investigators that "the Defendant wanted to support J.H.'s campaign but did not want to contribute to the campaign directly, so instead put him on the PCAO payroll." *Id.* The monthly $3,000 payments stopped after J.H. lost the judicial election. *Id.*

The Government argues that this proffered evidence is admissible as *res gestae* or "background" evidence. *Id.* Alternatively, the Government maintains that the evidence is admissible under Federal Rules of Evidence Rule 404(b) as evidence of the Defendant's motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident. *Id.* Hall disputes that the evidence is admissible under any theory. Hall maintains that the government cannot prove that this evidence falls under the limiting factors required for the admission of *res gestae* evidence. [R. 40.] Hall further asserts that the evidence fails a Rule

2

404(b) analysis and must be excluded. *Id.* Hall finally contends that the evidence is not relevant under Rule 401 and that the evidence is unduly prejudicial under Rule 403. *Id.*

## II

### A

"Irrelevant evidence is not admissible" before federal courts. Fed. R. Evid. 402. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. The relevance threshold is low, and evidence is relevant if it "advances the ball one inch." *United States v. Betro*, 115 F.4th 429, 449 (6th Cir. 2024); *see also Dortch v. Fowler*, 588 F.3d 396, 401 (6th Cir. 2009).

The Sixth Circuit recognizes "the admissibility of *res gestae*, or background evidence, in limited circumstances when the evidence includes conduct that is 'inextricably intertwined' with the charged offense." *United States v. Clay*, 667 F.3d 689 (6th Cir. 2012) (quoting *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). *Res gestae* evidence serves as an exception to the bar on character evidence enumerated in Rule 404(b). *United States v. Buentello*, 423 Fed. App'x. 528, 533 (6th Cir. 2011). The exception is a limited one, and parties may not rely on the *res gestae* exception as a "backdoor" to circumvent the goals of Rule 404(b). *Id.* "To be properly admitted as background evidence, the evidence must have 'a causal, temporal or spatial connection with the charged offense.'" *Id.* (quoting *Hardy*, 228 F.3d at 748). "Typically, such evidence is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of a witness's testimony, or completes the story of the charged offense." *Id.*

3

"Under Federal Rule of Evidence 404(b), '[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character,' but '[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *United States v. Carter*, 779 F.3d 623, 625 (6th Cir. 2015). "In deciding the admissibility of Rule 404(b) evidence, the district court employs a three-step process in which it must determine whether: (1) the 'other act' actually occurred, (2) the evidence is offered for a permissible purpose, and (3) its probative value is not substantially outweighed by unfair prejudice." *Id.*

A court may nevertheless exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. When deciding whether to exclude relevant evidence under Rule 403, the Court should consider the probable effectiveness or lack of effectiveness of a limiting jury instruction. *Id.*; *see also* Fed. R. Evid. 105.

## B

The Court turns first to whether the evidence of C.H. and J.H. receiving payments from the Pike County Attorney's Office is relevant to the counts brought against Hall for mail fraud and theft of government funds. The Court examines whether the evidence of C.H. and J.H.'s work at the PCAO advances the government's theory even by "one inch." *Betro*, 115 F.4th at 449. The work history of C.H. and J.H. is admissible as relevant evidence if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.

4

Hall argues that this proposed evidence is not relevant, as "the circumstances surrounding their employment, being separate and distinct from [Attorney A]'s employment with the PCAO, makes it no more or less likely that Judge Hall engaged in mail or federal funds fraud" and that "the charged conduct" does not "serve as a step on one evidentiary route to the ultimate fact." [R. 40 at 11–12.] This is a limited reading of the relevancy standard. The proposed testimony involves allegations that C.H. and J.H. received state money from the PCAO for work they did not do. The circumstances surrounding C.H. and J.H.'s employments are hardly "separate and distinct" from Attorney A's employment. All three allegations (C.H., J.H., and Attorney A) share a common fact pattern indicating that Hall was willing to use his position to reward friends and family with unearned state salaries and jobs. This speaks to an underlying fact that the Government must prove – whether Hall used his position to reward friends and family with state money for "work" that they never performed. The testimony about C.H. and J.H. is relevant to that question. For these reasons, the evidence is relevant under Rule 402.

### C

The Court next turns to the question of whether this relevant evidence is admissible. The Government argues that the evidence is admissible as *res gestae* intrinsic background evidence or, in the alternative, as one of the permitted uses of "other crimes, wrongs or acts" evidence under Rule 404(b). Hall disputes that the evidence is admissible under either standard and further argues that the evidence fails the balancing test of Rule 403.

### 1

Rule 404(b) provides that '[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in

accordance with the character." Intrinsic evidence, also referred to as "background" or "*res gestae*" evidence, serves as an exception to Rule 404(b). *United States v. Wilson*, 837 F. App'x 396, 399 (6th Cir. 2020). The Sixth Circuit allows the admission of background acts as intrinsic evidence when the background "acts are 'inextricably intertwined with evidence of the crime charged,' making them part of a 'single criminal episode,' or 'part of a continuing pattern of illegal activity.'" *Id.* (internal citations omitted). "Proper background evidence has a causal, temporal, or spatial connection with the charged offense" and "is a prelude to the charged offense, is directly probative of the charged offense, [or] arises from the same events as the charged offense." *Hardy*, 228 F.3d at 748.

Hall disputes that the necessary causal, temporal, or spatial connections are present in the evidence at issue. [R. 40 at 4.] Hall points out that Attorney A worked as an assistant county attorney from 2010 through May 2020. *Id.* at 5. Hall states that C.H. worked for the PCAO from January 2016 until October 2017 and then served again from October 2018 through June 2020. *Id.* As to J.H., Hall states that J.H. worked as an assistant county attorney from mid-2019 through October of 2019. *Id.* Hall insists that this represents a significant temporal gap between the employment of the three individuals at issue by focusing on the fact that Attorney A began working for the PCAO many years before either C.H. or J.H. did. *Id.*

The Court does not see the temporal gap in the same light. Both Counts of mail fraud in this case involve payroll certifications dated April 30, 2020, and May 15, 2020. [R. 1.] At that time, Hall employed both C.H. and Attorney A on the PCAO payroll. Attorney A's tenure overlapped with J.H.'s, as both would have been on the PCAO payroll during the entirety of J.H.'s short time there in 2019. The Government contends that its evidence will show that Hall defrauded taxpayers and the Commonwealth by employing an attorney who did essentially no

6

work for the Pike County Attorney's Office." [R. 26.] This evidence, purporting to show that C.H. and J.H. received a similar arrangement with Hall, is "directly probative of the charged offense," likely "arises from the same events as the charged offense," and "completes the story of the charged offense." *Hardy*, 228 F.3d at 748.

Hall claims that C.H. and J.H. have no connection to the scheme that the Government accuses Hall of entering into with Attorney A. [R. 40 at 5.] But the theory of the government's case is quite simple. Hall paid Attorney A taxpayer money that he did not earn. The theory behind the C.H. and J.H. evidence is the exact same. Left unsaid in the briefing is the sense that the hiring and compensation of C.H. and J.H., which likely involved the same payroll certification process underpinning the Government's mail fraud charges, was likely illegal. The Sixth Circuit recognizes that trial courts may "admit evidence regarding a defendant's *unindicted* criminal activity when that activity is 'intrinsic' or 'inextricably intertwined' with charges named in the indictment." *United States v. Churn*, 800 F.3d 768 (6th Cir. 2015). Evidence that Hall broadly hired friends and family members who did little to no work and then paid them with state funds is inextricably intertwined with the indicted offenses relating to Attorney A for the same actions.

### 2

Although the evidence is admissible as *res gestae* background evidence, the Court will also analyze whether it is admissible under Rule 404(b). Rule 404(b) generally prohibits the introduction of "other crimes, wrongs, or acts" character evidence. "The reason for the rule is that such character evidence is of slight probative value and tends to distract the trier of fact from the main question of what actually happened on a particular occasion." *Jones v. Southern Pacific R.R.*, 962 Fed.2d 447, 449 (5th Cir. 1992). But a party can still admit "other acts" evidence if a

7

party intends to use it to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). For a party to admit potential "other act" evidence, it must persuade the district court that (1) there is sufficient evidence that the act took place, (2) the evidence was admissible for a proper purpose, and (3) the probative value of the other acts evidence when offered for the proper purpose is not substantially outweighed by the unfairly prejudicial effect. *United States v. Underwood*, 129 F.4th 912, 937 (6th Cir. 2025).

The United States' Rule 404(b) Notice is remarkably brief in its explanation of which permitted purpose the evidence falls under. [R. 26.] The Notice articulates reasons for why the evidence is admissible as *res gestae* evidence, but does not do so for why the evidence would be admissible under 404(b), merely stating that "[a]lternatively, the evidence warrants admission pursuant to Rule 404(b), as evidence of the Defendant's motive, opportunity, intent, preparation, plan, knowledge, absence of mistake, or lack of accident." *Id.* at 3. Indeed, the sparse description contained in the notice forced defense counsel to guess at which permitted purpose the Government intends to use the evidence.[2] [R. 40 at 8–9.] Defense counsel, through process of elimination, suggests that the Government's most likely permitted use is "intent, preparation, or plan." *Id.* at 9.

The first step of the Rule 404(b) analysis requires the Court to address whether there is sufficient evidence that the act took place. The Court has very little to work with on this determination. The Government's notice is the first and only entry in the docket by the United

---

[2] Rule 404(b)(3)(B) requires the prosecutor to "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." While the government fulfilled the notice requirements of Rule 404(b)(3), the Court reminds the United States that simply listing *all possible* permitted uses is poor practice for the purposes of (b)(3)(B).

States containing references to the testimony regarding C.H. and J.H. The Government states that "several witnesses have told investigators that the Defendant also employed two other individuals who did little or no work for the PCAO." [R. 26.] However, discovery in this case has been voluminous, accounting for over 31,178 pages, 3,800 separate documents, and several videos. [R. 16 at 3.] Through discovery, the United States claims that "witnesses stated, and records corroborate, that C.H. would be removed from the payroll around election time. As reflected in the payroll certifications produced in discovery, C.H. was removed from the PCAO payroll at approximately the same time Attorney A was removed from the PCAO payroll." [R. 26 at 2.] The United States also gleaned through discovery that "J.H. was not added to the PCAO payroll but instead received approximately $3,000 a month in routine payments from a PCAO bank account, between July 31, 2019, and November 1, 2019. Those payments stopped after J.H. lost the general election in November 2019." *Id.* Notably, Hall does not *deny* that these payments occurred, but rather raises questions of witness reliability, hearsay, and bias. [R. 40 at 7–8.] Discovery thus supports the theory of the Government's claims, and it is well-established that lay witnesses can testify about what they personally saw, heard, or experienced in relation to the case. *See* Fed. R. Evid. 701. The Court finds that there is sufficient evidence to find that Hall paid C.H. and J.H. with state funds while hiring them, while testimony and discovery may provide sufficient evidence to find that C.H. and J.H. performed little to no work in their respective roles. Hall can address his concerns regarding hearsay and bias through proper objections and rigorous cross-examination.

Second, the Court analyzes whether the evidence was admissible for a proper or legitimate purpose. This inquiry requires an additional three-part review. "Evidence of other acts is probative of a material issue other than character if (1) the evidence is offered for an

9

admissible purpose, (2) the purpose for which the evidence is offered is material or 'in issue,' and (3) the evidence is probative with regard to the purpose for which it is offered." *United States v. Bell*, 516 F.3d 432, 441–42 (6th Cir. 2008) (internal citations omitted). The evidence is admissible for an admissible purpose as plan and knowledge evidence under Rule 404(b). In *United States v. Weidman*, 572 F.2d 1199 (7th Cir. 1978), the Seventh Circuit upheld a district court's ruling that testimony as to other fraudulent activities not contained in the indictment was probative and admissible. *Weidman*, 572 F.2d at 1202–3. In analyzing the admissibility of evidence of earlier, unindicted schemes, the Court wrote that "the use of prior similar acts for this purpose is appropriate whenever the accused denies the very doing of the act charged… Thus, by showing that the earlier schemes 'bore a singular strong resemblance to the pattern of the offense charged, the government established a pre-existing plan or design which, in turn, tended to show 'the doing of the act designed.'" *Id.* (internal citations omitted). Here, as in *Weidman*, the Government intends to use the evidence of C.H. and J.H.'s employment — which bears a strong resemblance to indicted offenses involving Attorney A — for the purpose of "plan" evidence. The evidence about C.H. and J.H. directly corresponds to the same alleged illegality at issue with Attorney A and is thus at issue. Where the Government shows that Hall, "by virtue of his knowledge of, or involvement in, the earlier schemes, was well acquainted with the modus operandi employed in the alleged mail fraud offense," the evidence is admissible as probative. *Id.* at 1203.

Third, the Court must answer whether the probative value of the other acts evidence is not substantially outweighed by an unfairly prejudicial effect. In doing so, the Court will also address Hall's Rule 403 claim. The Supreme Court defines "unfair prejudice" in the criminal context as "the capacity of some concededly relevant evidence to lure the factfinder into

10

declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997). "Although… 'propensity evidence' is relevant, the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance." *Id.* (citing *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982)). In addition to protecting against unfair prejudice, a party can move to exclude otherwise relevant evidence under Rule 403 if it confuses the issues, misleads the jury, creates undue delay, wastes time, or needlessly presents cumulative evidence. Fed. R. Evid. 403.

Hall raises several 403 issues. First, Hall suggests that this evidence would "confuse the jury at trial" and create the situation for "two mini-trials concerning individuals who are not the defendant in this case and who are not part of this case." [R. 40 at 12.] Litigating these assertions would represent "a total distraction from the purpose of trial." *Id.* Less directly, Hall proposes that the evidence will be "unduly prejudicial" and would "invite precisely the forbidden propensity inference the case law condemns." *Id.* at 11. The risk of an undue delay or waste of time is quite low where the Government's proposed evidence involves two individuals with factual support in the form of discovery materials and testimony. The Court does not gather from the Government's Notice or Hall's Motion that the C.H. and J.H. evidence presents complex or abstract concepts that would confuse the jury or lengthen the trial. Further, the evidence is not unduly prejudicial. Evidence of allegedly questionable office management practices is hardly the same as admitting evidence of a prior conviction, for example. In prior briefing, Hall argued that the alleged wrongs do not violate any state law, suggesting that the alleged practices cannot be

11

prejudicial as they are not illegal.[3]  [R. 21-8 at 2, 28.]  Despite Hall's suggestion that a limiting instruction may not guard against any prejudicial impacts, the Court can "give a limiting instruction, if requested, such that the jury will only consider the evidence for the proper purpose rather than as character or propensity evidence." *United States v. Stout*, 509 F.3d 796, 799 (6th Cir. 2007).  The probative value of the evidence is not substantially outweighed by any unfair prejudice.  The offered evidence satisfies the Rule 404(b) test and the Rule 403 balancing test.

### III

The Government's proposed evidence is admissible under either a *res gestae* or Rule 404(b) theory.  Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Defendant Hall's Motion *in Limine* **[R. 40]** is **DENIED**.

This the 30th day of October, 2025.

Gregory F. Van Tatenhove
United States District Judge

---

[3] Hall previously argued that the indictment lacked any state-law underpinning on a theory that the Kentucky Court of Appeals held that the Kentucky Revised Statutes lacked any rule, regulation, or policy detailing the hours to be worked by part-time employees of the Commonwealth's Attorney's Offices.  [R. 21-8, 21-7].